J-S19022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RYAN CLARKE BAUM | : | |
| | : | |
| Appellant | : | No. 1154 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 6, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000567-2022

BEFORE: DUBOW, J., BECK, J., and COLINS, J.[*]

MEMORANDUM BY BECK, J.:          **FILED JULY 03, 2024**

Ryan Clarke Baum ("Baum") appeals from the judgment of sentence imposed by the Court of Common Pleas for Lancaster County ("trial court") following his conviction of terroristic threats with intent to terrorize another.[1] On appeal, Baum challenges the sufficiency of the evidence to support his conviction. After careful review, we affirm.

On January 22, 2022, Baum, who was intoxicated, and his wife, Brittany Baum ("Brittany"), engaged in an argument over Baum's attempt to feed the family dog a chicken bone. At one point, the argument escalated, and Baum threw a full water bottle in Brittany's direction, though it did not hit her. He

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706(a)(1).

then broke an artificial plant and scattered the pieces before leaving the room. Brittany cleaned up the mess while calling her mother to explain the situation.

Later, while Brittany was in the bathroom, Baum burst in to confront her regarding her mother calling him. Baum subsequently smashed a potted plant onto the bathroom floor, told Brittany to clean it up, and left the bathroom. As Brittany called the police, Baum returned to the bathroom and attempted to grab the phone. Brittany threw the phone to their son, M.B., while the 911 dispatcher was still on the line, and told M.B. to run. M.B. ran outside with Baum chasing him and Brittany close behind. Once outside, M.B. gave the phone to Brittany. Baum then returned to the house as their two daughters joined Brittany and M.B. outside. While still outside the house, Baum shouted to his family that he was going to get his gun and kill Brittany, the children, and then himself. He went inside and retrieved his firearm but remained inside the home. His family waited outside until the police responded to Brittany's call. The officers eventually disarmed Baum in his home and found the firearm loaded with a round in the chamber.

The police arrested Baum, and the Commonwealth charged him with four counts of terroristic threats—one count each for Brittany and the three minor children. The case proceeded to a bench trial. Ultimately, the trial court found him guilty of one count of terroristic threats, pertaining to Brittany, and not guilty on the remaining three counts pertaining to his three minor children. The trial court sentenced Baum to two years of probation.

Baum initially filed an untimely notice of appeal, which this Court quashed by Per Curiam Order. *See Commonwealth v. Baum*, 541 MDA 2023 (Pa. Super. filed May 22, 2023) (Order). Baum then filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), seeking the reinstatement of his direct appeal rights. The Commonwealth did not oppose the petition, and the PCRA court reinstated Baum's direct appeal rights. He then filed a notice of appeal nunc pro tunc and a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Baum presents one issue for our review: "For a conviction under 18 Pa.C.S. § 2706(a)(1), is the evidence sufficient as a matter of law to show [Baum's] statement constitutes a 'true threat' that can be punished under the First Amendment of the U.S. Constitution?" Baum's Brief at 4.

Baum argues that the evidence is insufficient to support his terroristic threats conviction. *Id.* at 11, 13. Baum acknowledges that his statement, threatening to kill Brittany, was directly communicated to her, but contends that it was that of a conditional, future action, taking it outside the realm of behavior punishable under section 2706(a)(1). *Id.* at 13. He asserts that the "Commonwealth's case-in-chief shows Baum was seriously intoxicated, and society does not regard angry, drunken ramblings as 'serious expressions.'" *Id.* He specifically claims that he communicated the threats as a result of his "drunken, spur of the moment anger," and therefore, it was too attenuated to establish intent. *Id.* at 14. Baum highlights that he did not have a weapon

at the time he made the statement, nor did the Commonwealth present any evidence that he had a propensity of violence. *Id.* at 14. Baum argues that the trial court erroneously cited to 18 Pa.C.S. § 308[2] for the first time in its Rule 1925(a) opinion, noting the Commonwealth waived any right to preclude an intoxication defense, as it never raised an objection at trial. *Id.* at 16-17.

Our Court's standard of review of a challenge to the sufficiency of the evidence is well settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa. Super. 2022) (quotation marks and citations omitted).

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to … commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S. § 2706(a)(1). The purpose of the terroristic threats statute "is to impose criminal liability on

---

[2] Section 308 states the following: "Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder." 18 Pa.C.S. § 308.

- 4 -

persons who make threats which seriously impair personal security or public convenience." ***Commonwealth v. Kline***, 201 A.3d 1288, 1290 (Pa. Super. 2019) (citation omitted). Accordingly, "[n]either the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." ***Id.*** (citation omitted). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." ***Id.*** (citation omitted).

In evaluating the intent to terrorize, various contextual circumstances are considered, such as "whether the threat was conditional, whether it was communicated directly to the victim, whether the victim had reason to believe the speaker had a propensity to engage in violence, and how listeners reacted to the speech." ***Interest of: J.J.M.***, 265 A.3d 246, 259 (Pa. 2021). Intent can be proven by circumstantial evidence. ***Commonwealth v. Campbell***, 253 A.3d 346, 348 (Pa. Super. 2021).

The record reflects that Brittany and an intoxicated Baum engaged in an argument after Baum attempted to feed their dog a chicken bone. N.T., 2/24/2023, at 15-16, 18-19, 29, 30. During the argument, Baum engaged in several violent acts, including throwing a water bottle and an artificial plant in Brittany's direction; storming into the bathroom and throwing a potted plant on the floor; trying to grab the phone from Brittany's hand as she called the police (out of fear of Baum's behavior); chasing his minor son, who obtained

the phone, outside; and ultimately threatening to kill Brittany and their three minor children, and entering the home to obtain his gun (which he did). **See id.** at 16-22, 84. Brittany indicated that she felt "[s]cared, sad, [and] afraid" after hearing Baum's threat. **Id.** at 22; **see also id.** at 24 (stating that the children were crying during the 911 call). Responding officers found Brittany and the children outside the house, in the cold, with no shoes or socks on their feet. **Id.** at 42. They found Baum with a loaded gun in his waistband. **Id.** at 44-45.

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that there is ample evidence to support a finding that Baum communicated a threat to commit crimes of violence directly to Brittany, and that he acted with the intent to terrorize Brittany. **See Campbell**, 253 A.3d at 348 (noting that intent can be inferred from acts or conduct or from the attendant circumstances). There is no record support for Baum's assertion that the statement was made in the spur of the moment of anger. In any event, we note that "[b]eing angry does not render a person incapable of forming the intent to terrorize." **Commonwealth v. Reynolds**, 835 A.2d 720, 730 (Pa. Super. 2003) (citation omitted). Further, contrary to Baum's claim, his statement does not suggest any conditional action. Indeed, after communicating the threat, Baum immediately retrieved a loaded firearm. Additionally, the record established Baum's propensity for violence based upon his actions prior to the threat, including throwing the plants and water bottle

and fighting over her phone when she attempted to call the police. Finally, Brittany stated that she was scared and afraid after Baum made the threat, and the threat caused Brittany and her children to remain outside in the cold weather, despite both she and the children being underdressed. **See** Trial Court Opinion, 10/16/2023, at 8 (noting that Baum did not react to his children standing in the cold weather after the threat or ask them to go inside); **see also Kline**, 201 A.3d at 1290. Thus, the totality of the evidence was sufficient to sustain Baum's terroristic threats conviction.[3]

---

[3] Baum additionally raises a First Amendment challenge to his conviction. **See** Baum's Brief at 11-12, 15-16, 17-19. Although the First Amendment may be raised to support a challenge to a terroristic threats conviction, **see, e.g., J.J.M.**, 265 A.3d at 254; **Commonwealth v. Knox**, 190 A.3d 1146, 1152 (Pa. 2018), Baum failed to raise this claim in his Rule 1925(b) statement, raising only the issue addressed hereinabove. **See** Rule 1925(b) Statement, 9/8/2023. Therefore, the claim is waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); **see also Knox**, 190 A.3d at 1152 n.5 (noting that "[c]onstitutional claims are subject to waiver").

Nevertheless, we note that "[s]peech which communicates a serious expression of intent to commit an act of unlawful violence against a particular individual or group of individuals — more commonly referred to as a 'true threat' — is another certain class of speech that the United States Supreme Court has determined is beyond the protective ambit of the First Amendment." **J.J.M.**, 265 A.3d at 254 (citation and quotation marks omitted). In evaluating whether a speaker communicated a true threat, evidentiary weight is given to contextual circumstances, including "whether the threat was conditional, whether it was communicated directly to the victim, whether the victim had reason to believe the speaker had a propensity to engage in violence, and how the listeners reacted to the speech." **Knox**, 190 A.3d at 1159. Here, in analyzing Baum's sufficiency claim, we have considered these contextual circumstances and determined that Baum acted with intent to terrorize Brittany. Accordingly, even if he properly preserved the claim, we do not find

*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/03/2024

---

the First Amendment's prohibition against criminalizing speech applicable to this case.