J-S38025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JASON THOMAS | : | |
| | : | |
| Appellant | : | No. 68 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006107-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JASON THOMAS | : | |
| | : | |
| Appellant | : | No. 69 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006108-2021

BEFORE:  McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 15, 2025**

Appellant, Jason Thomas, appeals from the judgment of sentence imposed in the Philadelphia County Court of Common Pleas, following his jury trial convictions for two counts of terroristic threats.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On

---

[1] 18 Pa.C.S.A. § 2706(a)(1).

March 11, 2021, Philadelphia Police Officers Zachary Stout and Jesse Rosinski were on patrol together in a marked police car, when they observed a car with overly tinted windows. The officers checked the car's license plate and initiated a traffic stop after discovering that it was unregistered. Officer Stout approached the driver's side of the vehicle and asked the driver, Appellant, for his license.

> [Appellant] immediately became hostile, telling Officer Stout, "Man, listen, I'm parked, man, you ain't getting' ready to do that shit." [Appellant] then attempted to open his door, but Officer Stout pushed it back closed. [Appellant] continued to raise his voice and eventually yelled, "Get the fuck out of here." Soon after, [Appellant] began demanding that Officer Stout "call [his] white shirt," referring to a supervisor. [Appellant] then rolled up the tinted window on his driver's side door.
>
> Through the open passenger side door, Officer Rosinski asked [Appellant] whether the car was registered, and [Appellant] responded that it was not. Officer Rosinski told [Appellant] that the officers would have to tow the car, and [Appellant] yelled, "You ain't takin' shit." Moments later, [Appellant] again attempted to open the driver's side door and told Officer Stout to "get off the door," but Officer Stout pushed it back closed. [Appellant] then attempted to exit through the passenger side, but Officer Rosinski told [Appellant] to stay in the car. Appellant responded, "I will fuck you up." [Appellant] then tried to push the driver's side door open again as Officer Stout struggled to keep it closed. Appellant told Officer Stout, "Get the fuck off my door." [Appellant] then pushed the driver's side door open and exited from his vehicle.
>
> After exiting the car, [Appellant] slammed the door shut on Officer Stout's hand, which was on top of the door frame. [Appellant] then began fighting with Officer Stout, punching Officer Stout with a closed fist. Officer Stout responded by punching back at [Appellant.] Officer Rosinski then ran around the vehicle to aid Officer Stout, who also radioed for

- 2 -

> help from other officers as a crowd formed around them. After fighting with [Appellant] for several minutes, the officers eventually pinned him to the ground. During and after the fight, [Appellant] repeatedly cursed at the officers and continued to attempt to resist them until they were able to place him into the back of a police car.

(Trial Court Opinion, dated 3/4/25, at 2-3) (record citations omitted).[2]

Appellant was arrested and charged at docket No. 107-2021 with aggravated assault, simple assault, and terroristic threats concerning his conduct against Officer Rosinski, and at docket No. 108-2021 with terroristic threats concerning his conduct against Officer Stout. The cases were consolidated for trial and on May 16, 2024, the jury found Appellant guilty of terroristic threats in both cases, and not guilty of aggravated assault or simple assault. On August 26, 2024, the trial court sentenced Appellant to one to two years of incarceration plus one year of probation at each case, imposed consecutively. Appellant filed a timely post sentence motion, which the court denied on December 17, 2024. Appellant filed timely notices of appeal on December 23, 2024, at each underlying docket.[3] Pursuant to the court's order, Appellant filed his concise statement of errors complained of on appeal on February 6, 2025.

Appellant raises the following issue on appeal:

---

[2] At trial, Officer Rosinski testified that Appellant told both officers he would "fuck them up." (N.T. Trial, 5/15/24, at 106).

[3] Following Appellant's application for consolidation, this Court consolidated the cases for appeal.

> Was the evidence insufficient to sustain [Appellant's] convictions for terroristic threats as the Commonwealth failed to prove that [Appellant's] spur of the moment threats showed a settled intent to terrorize police?

(Appellant's Brief at 2).

Our standard of review of a challenge to the sufficiency of the evidence is well settled.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019)

(quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super.

2013)). Importantly, "the jury, which passes upon the weight and credibility

of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* at 337 (quoting *Commonwealth v. Ramtahal*, 613 Pa. 316, 33 A.3d 602, 607 (2011)).

Appellant argues that the Commonwealth failed to establish that Appellant had the intent to terrorize. Appellant claims that his threat to "fuck up the officers" was no more than spontaneous outbursts made during a two-minute verbal exchange with police that quickly escalated. Appellant insists that there was no premeditation to his words, and his spur of the moment threats were not the type that the statute was intended to criminalize. Appellant analogizes the facts of his case to that of *Commonwealth v. Kidd*, 442 A.2d 826 (Pa.Super. 1982), where the defendant's threat was made during an unplanned and heated confrontation, constituting a spur of the moment statement during a period of transitory anger. (*See* Appellant's Brief at 10). Appellant concludes that the evidence was insufficient to establish his *mens rea* for terroristic threats, and this Court must grant relief. We disagree.

The Crimes Code states that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). This Court has explained:

> "To sustain a conviction for terroristic threats, the Commonwealth must prove that the defendant 1) made a threat to commit a crime of violence and 2) the threat was communicated with the intent to terrorize another." *Commonwealth v. Campbell*, 253 A.3d 346, 348 (Pa.Super. 2021). …[T]he legislature did not intend to

- 5 -

"penalize mere spur-of-the-moment threats which result from anger." *Id.* However, "[w]hen determining whether a statement constitutes a terroristic threat, we must look at the statement in light of all the surrounding circumstances." *Id.*; *see also* 18 Pa.C.S.[A.] § 2706 cmt.

"The purpose of [the terroristic threats statute] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." *Id.* "[T]he real issue is whether the Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether the Appellant made the statements in the context of a heated discussion. Being angry does not render a person incapable of forming the intent to terrorize." *Commonwealth v. Walls*, 144 A.3d 926, 936 (Pa.Super. 2016)[, *appeal denied*, 641 Pa. 244, 167 A.3d 698 (2017)] (citations, quotation marks, and brackets omitted). [Thus,] "[w]hen two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger." *Id.* at 937.

*Commonwealth v. Demulter*, 314 A.3d 934, 937-38 (Pa.Super. 2024), *appeal denied*, ____ Pa. ___, 325 A.3d 452 (2024). Notably, the statute does not require that the defendant intends to carry out the threat, nor does it require proof that the victim believes that the threat will be carried out. *See id.*

Whether the elements of terroristic threats are satisfied depends on the totality of the circumstances present. For example, in *Demulter, supra*, this Court held that the appellant's threat to kill her neighbor was not a spur of the moment threat resulting from anger since it was not precipitated by a heated exchange. This Court explained that even if the appellant's threat was made in anger, it was not the result of spur of the moment transitory anger

but came from the longstanding hostile relationship between the appellant and her neighbor. *Demulter, supra* at 938.

Similarly, in *Commonwealth v. Campbell*, 253 A.3d 346 (Pa.Super. 2021), this Court considered the totality of the circumstances, and explained that where the appellant's threat of physical violence was sandwiched between actual acts of physical violence, the circumstances provided a sufficient basis for the factfinder to infer that the appellant threatened the victim with the intent to terrorize him, rather than conclude that the threats were spur of the moment. *Id.* at 349.

On the other hand, in *Kidd, supra*, on which Appellant relies, this Court held that under the totality of the circumstances, the appellant's statements did not form the basis for terroristic threats. There, police officers arrested the appellant for public drunkenness. The appellant fell while in the street and was taken to the hospital for treatment. In the hospital, the appellant told the police he was going to kill them. This Court concluded that "[a]ppellant was obviously inebriated and in an agitated and angry state of mind. The record evinces that his conduct expressed transitory anger rather than a settled purpose to carry out the threat or to terrorize the other person." *Kidd, supra* at 827. As such, this Court vacated the appellant's conviction for terroristic threats.

Instantly, the trial court concluded that "similar to *Campbell,*[ *supra*, Appellant's] intent to terrorize was evidenced by [Appellant's] immediate

attempts to follow through on injuring the officers by forcing his way out of his car and physically attacking them." (Trial Court Opinion, 3/4/25, at 6). The trial court found that Appellant's threats were "not made merely in 'transitory anger,' given that he proceeded to initiate a fight with the officers." (*Id.*) As such, the court concluded that the Commonwealth presented sufficient evidence to prove the *mens rea* necessary to sustain Appellant's conviction.

We agree with the trial court's analysis. The evidence was sufficient to establish that Appellant threatened the officers with the intent to terrorize. *See* 18 Pa.C.S.A. § 2706(a)(1). Appellant threatened the officers during a routine traffic stop after police repeatedly advised him to remain in his vehicle. Contrary to the appellant in *Kidd, supra*, Appellant demonstrated the means and ability to carry out his violent threats as evidenced by his subsequent attack on the officers immediately after threatening to "fuck [them] up." Viewing the totality of the circumstances in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient for the jury to reasonably infer that Appellant intended to terrorize the officers. *See Demulter, supra*; *Campbell, supra*. Therefore, Appellant's challenge to the sufficiency of the evidence underlying his convictions is meritless. *See Sebolka, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/15/2025

J-S38025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
          :        PENNSYLVANIA
          :
v.          :
          :
          :
JASON THOMAS          :
          :
Appellant          :   No. 68 EDA 2025

Appeal from the Judgment of Sentence Entered August 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006107-2021

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
          :        PENNSYLVANIA
          :
v.          :
          :
          :
JASON THOMAS          :
          :
Appellant          :   No. 69 EDA 2025

Appeal from the Judgment of Sentence Entered August 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006108-2021

BEFORE:  McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.:          **FILED DECEMBER 15, 2025**

Appellant, Jason Thomas, appeals from the judgment of sentence imposed in the Philadelphia County Court of Common Pleas, following his jury trial convictions for two counts of terroristic threats.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On

_____

[1] 18 Pa.C.S.A. § 2706(a)(1).

March 11, 2021, Philadelphia Police Officers Zachary Stout and Jesse Rosinski were on patrol together in a marked police car, when they observed a car with overly tinted windows. The officers checked the car's license plate and initiated a traffic stop after discovering that it was unregistered. Officer Stout approached the driver's side of the vehicle and asked the driver, Appellant, for his license.

> [Appellant] immediately became hostile, telling Officer Stout, "Man, listen, I'm parked, man, you ain't getting' ready to do that shit." [Appellant] then attempted to open his door, but Officer Stout pushed it back closed. [Appellant] continued to raise his voice and eventually yelled, "Get the fuck out of here." Soon after, [Appellant] began demanding that Officer Stout "call [his] white shirt," referring to a supervisor. [Appellant] then rolled up the tinted window on his driver's side door.
>
> Through the open passenger side door, Officer Rosinski asked [Appellant] whether the car was registered, and [Appellant] responded that it was not. Officer Rosinski told [Appellant] that the officers would have to tow the car, and [Appellant] yelled, "You ain't takin' shit." Moments later, [Appellant] again attempted to open the driver's side door and told Officer Stout to "get off the door," but Officer Stout pushed it back closed. [Appellant] then attempted to exit through the passenger side, but Officer Rosinski told [Appellant] to stay in the car. Appellant responded, "I will fuck you up." [Appellant] then tried to push the driver's side door open again as Officer Stout struggled to keep it closed. Appellant told Officer Stout, "Get the fuck off my door." [Appellant] then pushed the driver's side door open and exited from his vehicle.
>
> After exiting the car, [Appellant] slammed the door shut on Officer Stout's hand, which was on top of the door frame. [Appellant] then began fighting with Officer Stout, punching Officer Stout with a closed fist. Officer Stout responded by punching back at [Appellant.] Officer Rosinski then ran around the vehicle to aid Officer Stout, who also radioed for

- 2 -

> help from other officers as a crowd formed around them. After fighting with [Appellant] for several minutes, the officers eventually pinned him to the ground. During and after the fight, [Appellant] repeatedly cursed at the officers and continued to attempt to resist them until they were able to place him into the back of a police car.

(Trial Court Opinion, dated 3/4/25, at 2-3) (record citations omitted).[2]

Appellant was arrested and charged at docket No. 107-2021 with aggravated assault, simple assault, and terroristic threats concerning his conduct against Officer Rosinski, and at docket No. 108-2021 with terroristic threats concerning his conduct against Officer Stout. The cases were consolidated for trial and on May 16, 2024, the jury found Appellant guilty of terroristic threats in both cases, and not guilty of aggravated assault or simple assault. On August 26, 2024, the trial court sentenced Appellant to one to two years of incarceration plus one year of probation at each case, imposed consecutively. Appellant filed a timely post sentence motion, which the court denied on December 17, 2024. Appellant filed timely notices of appeal on December 23, 2024, at each underlying docket.[3] Pursuant to the court's order, Appellant filed his concise statement of errors complained of on appeal on February 6, 2025.

Appellant raises the following issue on appeal:

_____

[2] At trial, Officer Rosinski testified that Appellant told both officers he would "fuck them up." (N.T. Trial, 5/15/24, at 106).

[3] Following Appellant's application for consolidation, this Court consolidated the cases for appeal.

> Was the evidence insufficient to sustain [Appellant's] convictions for terroristic threats as the Commonwealth failed to prove that [Appellant's] spur of the moment threats showed a settled intent to terrorize police?

(Appellant's Brief at 2).

Our standard of review of a challenge to the sufficiency of the evidence is well settled.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019)

(quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super.

2013)). Importantly, "the jury, which passes upon the weight and credibility

of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* at 337 (quoting *Commonwealth v. Ramtahal*, 613 Pa. 316, 33 A.3d 602, 607 (2011)).

Appellant argues that the Commonwealth failed to establish that Appellant had the intent to terrorize. Appellant claims that his threat to "fuck up the officers" was no more than spontaneous outbursts made during a two-minute verbal exchange with police that quickly escalated. Appellant insists that there was no premeditation to his words, and his spur of the moment threats were not the type that the statute was intended to criminalize. Appellant analogizes the facts of his case to that of *Commonwealth v. Kidd*, 442 A.2d 826 (Pa.Super. 1982), where the defendant's threat was made during an unplanned and heated confrontation, constituting a spur of the moment statement during a period of transitory anger. (*See* Appellant's Brief at 10). Appellant concludes that the evidence was insufficient to establish his *mens rea* for terroristic threats, and this Court must grant relief. We disagree.

The Crimes Code states that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). This Court has explained:

> "To sustain a conviction for terroristic threats, the Commonwealth must prove that the defendant 1) made a threat to commit a crime of violence and 2) the threat was communicated with the intent to terrorize another." *Commonwealth v. Campbell*, 253 A.3d 346, 348 (Pa.Super. 2021). …[T]he legislature did not intend to

> "penalize mere spur-of-the-moment threats which result from anger." *Id.* However, "[w]hen determining whether a statement constitutes a terroristic threat, we must look at the statement in light of all the surrounding circumstances." *Id.*; *see also* 18 Pa.C.S.[A.] § 2706 cmt.
>
> "The purpose of [the terroristic threats statute] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." *Id.* "[T]he real issue is whether the Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether the Appellant made the statements in the context of a heated discussion. Being angry does not render a person incapable of forming the intent to terrorize." *Commonwealth v. Walls*, 144 A.3d 926, 936 (Pa.Super. 2016)[, *appeal denied*, 641 Pa. 244, 167 A.3d 698 (2017)] (citations, quotation marks, and brackets omitted). [Thus,] "[w]hen two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger." *Id.* at 937.

*Commonwealth v. Demulter*, 314 A.3d 934, 937-38 (Pa.Super. 2024), *appeal denied*, ____ Pa. ___, 325 A.3d 452 (2024). Notably, the statute does not require that the defendant intends to carry out the threat, nor does it require proof that the victim believes that the threat will be carried out. *See id.*

Whether the elements of terroristic threats are satisfied depends on the totality of the circumstances present. For example, in *Demulter, supra*, this Court held that the appellant's threat to kill her neighbor was not a spur of the moment threat resulting from anger since it was not precipitated by a heated exchange. This Court explained that even if the appellant's threat was made in anger, it was not the result of spur of the moment transitory anger

but came from the longstanding hostile relationship between the appellant and her neighbor. *Demulter, supra* at 938.

Similarly, in *Commonwealth v. Campbell*, 253 A.3d 346 (Pa.Super. 2021), this Court considered the totality of the circumstances, and explained that where the appellant's threat of physical violence was sandwiched between actual acts of physical violence, the circumstances provided a sufficient basis for the factfinder to infer that the appellant threatened the victim with the intent to terrorize him, rather than conclude that the threats were spur of the moment. *Id.* at 349.

On the other hand, in *Kidd, supra*, on which Appellant relies, this Court held that under the totality of the circumstances, the appellant's statements did not form the basis for terroristic threats. There, police officers arrested the appellant for public drunkenness. The appellant fell while in the street and was taken to the hospital for treatment. In the hospital, the appellant told the police he was going to kill them. This Court concluded that "[a]ppellant was obviously inebriated and in an agitated and angry state of mind. The record evinces that his conduct expressed transitory anger rather than a settled purpose to carry out the threat or to terrorize the other person." *Kidd, supra* at 827. As such, this Court vacated the appellant's conviction for terroristic threats.

Instantly, the trial court concluded that "similar to *Campbell,*[ *supra*, Appellant's] intent to terrorize was evidenced by [Appellant's] immediate

attempts to follow through on injuring the officers by forcing his way out of his car and physically attacking them." (Trial Court Opinion, 3/4/25, at 6). The trial court found that Appellant's threats were "not made merely in 'transitory anger,' given that he proceeded to initiate a fight with the officers." (*Id.*) As such, the court concluded that the Commonwealth presented sufficient evidence to prove the *mens rea* necessary to sustain Appellant's conviction.

We agree with the trial court's analysis. The evidence was sufficient to establish that Appellant threatened the officers with the intent to terrorize. *See* 18 Pa.C.S.A. § 2706(a)(1). Appellant threatened the officers during a routine traffic stop after police repeatedly advised him to remain in his vehicle. Contrary to the appellant in *Kidd, supra*, Appellant demonstrated the means and ability to carry out his violent threats as evidenced by his subsequent attack on the officers immediately after threatening to "fuck [them] up." Viewing the totality of the circumstances in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient for the jury to reasonably infer that Appellant intended to terrorize the officers. *See Demulter, supra*; *Campbell, supra*. Therefore, Appellant's challenge to the sufficiency of the evidence underlying his convictions is meritless. *See Sebolka, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/15/2025

J-S38025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON THOMAS | : | |
| | : | |
| Appellant | : | No. 68 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006107-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON THOMAS | : | |
| | : | |
| Appellant | : | No. 69 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006108-2021

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.: **FILED DECEMBER 15, 2025**

Appellant, Jason Thomas, appeals from the judgment of sentence imposed in the Philadelphia County Court of Common Pleas, following his jury trial convictions for two counts of terroristic threats.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On

_____

[1] 18 Pa.C.S.A. § 2706(a)(1).

March 11, 2021, Philadelphia Police Officers Zachary Stout and Jesse Rosinski were on patrol together in a marked police car, when they observed a car with overly tinted windows. The officers checked the car's license plate and initiated a traffic stop after discovering that it was unregistered. Officer Stout approached the driver's side of the vehicle and asked the driver, Appellant, for his license.

> [Appellant] immediately became hostile, telling Officer Stout, "Man, listen, I'm parked, man, you ain't getting' ready to do that shit." [Appellant] then attempted to open his door, but Officer Stout pushed it back closed. [Appellant] continued to raise his voice and eventually yelled, "Get the fuck out of here." Soon after, [Appellant] began demanding that Officer Stout "call [his] white shirt," referring to a supervisor. [Appellant] then rolled up the tinted window on his driver's side door.
>
> Through the open passenger side door, Officer Rosinski asked [Appellant] whether the car was registered, and [Appellant] responded that it was not. Officer Rosinski told [Appellant] that the officers would have to tow the car, and [Appellant] yelled, "You ain't takin' shit." Moments later, [Appellant] again attempted to open the driver's side door and told Officer Stout to "get off the door," but Officer Stout pushed it back closed. [Appellant] then attempted to exit through the passenger side, but Officer Rosinski told [Appellant] to stay in the car. Appellant responded, "I will fuck you up." [Appellant] then tried to push the driver's side door open again as Officer Stout struggled to keep it closed. Appellant told Officer Stout, "Get the fuck off my door." [Appellant] then pushed the driver's side door open and exited from his vehicle.
>
> After exiting the car, [Appellant] slammed the door shut on Officer Stout's hand, which was on top of the door frame. [Appellant] then began fighting with Officer Stout, punching Officer Stout with a closed fist. Officer Stout responded by punching back at [Appellant.] Officer Rosinski then ran around the vehicle to aid Officer Stout, who also radioed for

- 2 -

> help from other officers as a crowd formed around them. After fighting with [Appellant] for several minutes, the officers eventually pinned him to the ground. During and after the fight, [Appellant] repeatedly cursed at the officers and continued to attempt to resist them until they were able to place him into the back of a police car.

(Trial Court Opinion, dated 3/4/25, at 2-3) (record citations omitted).[2]

Appellant was arrested and charged at docket No. 107-2021 with aggravated assault, simple assault, and terroristic threats concerning his conduct against Officer Rosinski, and at docket No. 108-2021 with terroristic threats concerning his conduct against Officer Stout. The cases were consolidated for trial and on May 16, 2024, the jury found Appellant guilty of terroristic threats in both cases, and not guilty of aggravated assault or simple assault. On August 26, 2024, the trial court sentenced Appellant to one to two years of incarceration plus one year of probation at each case, imposed consecutively. Appellant filed a timely post sentence motion, which the court denied on December 17, 2024. Appellant filed timely notices of appeal on December 23, 2024, at each underlying docket.[3] Pursuant to the court's order, Appellant filed his concise statement of errors complained of on appeal on February 6, 2025.

Appellant raises the following issue on appeal:

_____

[2] At trial, Officer Rosinski testified that Appellant told both officers he would "fuck them up." (N.T. Trial, 5/15/24, at 106).

[3] Following Appellant's application for consolidation, this Court consolidated the cases for appeal.

> Was the evidence insufficient to sustain [Appellant's] convictions for terroristic threats as the Commonwealth failed to prove that [Appellant's] spur of the moment threats showed a settled intent to terrorize police?

(Appellant's Brief at 2).

Our standard of review of a challenge to the sufficiency of the evidence is well settled.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019)

(quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)). Importantly, "the jury, which passes upon the weight and credibility

of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* at 337 (quoting *Commonwealth v. Ramtahal*, 613 Pa. 316, 33 A.3d 602, 607 (2011)).

Appellant argues that the Commonwealth failed to establish that Appellant had the intent to terrorize. Appellant claims that his threat to "fuck up the officers" was no more than spontaneous outbursts made during a two-minute verbal exchange with police that quickly escalated. Appellant insists that there was no premeditation to his words, and his spur of the moment threats were not the type that the statute was intended to criminalize. Appellant analogizes the facts of his case to that of *Commonwealth v. Kidd*, 442 A.2d 826 (Pa.Super. 1982), where the defendant's threat was made during an unplanned and heated confrontation, constituting a spur of the moment statement during a period of transitory anger. (*See* Appellant's Brief at 10). Appellant concludes that the evidence was insufficient to establish his *mens rea* for terroristic threats, and this Court must grant relief. We disagree.

The Crimes Code states that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). This Court has explained:

> "To sustain a conviction for terroristic threats, the Commonwealth must prove that the defendant 1) made a threat to commit a crime of violence and 2) the threat was communicated with the intent to terrorize another." *Commonwealth v. Campbell*, 253 A.3d 346, 348 (Pa.Super. 2021). …[T]he legislature did not intend to

- 5 -

"penalize mere spur-of-the-moment threats which result from anger." *Id.* However, "[w]hen determining whether a statement constitutes a terroristic threat, we must look at the statement in light of all the surrounding circumstances." *Id.*; *see also* 18 Pa.C.S.[A.] § 2706 cmt.

"The purpose of [the terroristic threats statute] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." *Id.* "[T]he real issue is whether the Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether the Appellant made the statements in the context of a heated discussion. Being angry does not render a person incapable of forming the intent to terrorize." *Commonwealth v. Walls*, 144 A.3d 926, 936 (Pa.Super. 2016)[, *appeal denied*, 641 Pa. 244, 167 A.3d 698 (2017)] (citations, quotation marks, and brackets omitted). [Thus,] "[w]hen two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger." *Id.* at 937.

*Commonwealth v. Demulter*, 314 A.3d 934, 937-38 (Pa.Super. 2024), *appeal denied*, ___ Pa. ___, 325 A.3d 452 (2024). Notably, the statute does not require that the defendant intends to carry out the threat, nor does it require proof that the victim believes that the threat will be carried out. *See id.*

Whether the elements of terroristic threats are satisfied depends on the totality of the circumstances present. For example, in *Demulter, supra*, this Court held that the appellant's threat to kill her neighbor was not a spur of the moment threat resulting from anger since it was not precipitated by a heated exchange. This Court explained that even if the appellant's threat was made in anger, it was not the result of spur of the moment transitory anger

but came from the longstanding hostile relationship between the appellant and her neighbor. *Demulter, supra* at 938.

Similarly, in *Commonwealth v. Campbell*, 253 A.3d 346 (Pa.Super. 2021), this Court considered the totality of the circumstances, and explained that where the appellant's threat of physical violence was sandwiched between actual acts of physical violence, the circumstances provided a sufficient basis for the factfinder to infer that the appellant threatened the victim with the intent to terrorize him, rather than conclude that the threats were spur of the moment. *Id.* at 349.

On the other hand, in *Kidd, supra*, on which Appellant relies, this Court held that under the totality of the circumstances, the appellant's statements did not form the basis for terroristic threats. There, police officers arrested the appellant for public drunkenness. The appellant fell while in the street and was taken to the hospital for treatment. In the hospital, the appellant told the police he was going to kill them. This Court concluded that "[a]ppellant was obviously inebriated and in an agitated and angry state of mind. The record evinces that his conduct expressed transitory anger rather than a settled purpose to carry out the threat or to terrorize the other person." *Kidd, supra* at 827. As such, this Court vacated the appellant's conviction for terroristic threats.

Instantly, the trial court concluded that "similar to *Campbell,*[ *supra*, Appellant's] intent to terrorize was evidenced by [Appellant's] immediate

attempts to follow through on injuring the officers by forcing his way out of his car and physically attacking them." (Trial Court Opinion, 3/4/25, at 6). The trial court found that Appellant's threats were "not made merely in 'transitory anger,' given that he proceeded to initiate a fight with the officers." (*Id.*) As such, the court concluded that the Commonwealth presented sufficient evidence to prove the *mens rea* necessary to sustain Appellant's conviction.

We agree with the trial court's analysis. The evidence was sufficient to establish that Appellant threatened the officers with the intent to terrorize. *See* 18 Pa.C.S.A. § 2706(a)(1). Appellant threatened the officers during a routine traffic stop after police repeatedly advised him to remain in his vehicle. Contrary to the appellant in *Kidd, supra*, Appellant demonstrated the means and ability to carry out his violent threats as evidenced by his subsequent attack on the officers immediately after threatening to "fuck [them] up." Viewing the totality of the circumstances in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient for the jury to reasonably infer that Appellant intended to terrorize the officers. *See Demulter, supra*; *Campbell, supra*. Therefore, Appellant's challenge to the sufficiency of the evidence underlying his convictions is meritless. *See Sebolka, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/15/2025</u>

J-S38025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON THOMAS | : | |
| | : | |
| Appellant | : | No. 68 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006107-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON THOMAS | : | |
| | : | |
| Appellant | : | No. 69 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006108-2021

BEFORE:  McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 15, 2025**

Appellant, Jason Thomas, appeals from the judgment of sentence imposed in the Philadelphia County Court of Common Pleas, following his jury trial convictions for two counts of terroristic threats.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On

_____

[1] 18 Pa.C.S.A. § 2706(a)(1).

March 11, 2021, Philadelphia Police Officers Zachary Stout and Jesse Rosinski were on patrol together in a marked police car, when they observed a car with overly tinted windows. The officers checked the car's license plate and initiated a traffic stop after discovering that it was unregistered. Officer Stout approached the driver's side of the vehicle and asked the driver, Appellant, for his license.

> [Appellant] immediately became hostile, telling Officer Stout, "Man, listen, I'm parked, man, you ain't getting' ready to do that shit." [Appellant] then attempted to open his door, but Officer Stout pushed it back closed. [Appellant] continued to raise his voice and eventually yelled, "Get the fuck out of here." Soon after, [Appellant] began demanding that Officer Stout "call [his] white shirt," referring to a supervisor. [Appellant] then rolled up the tinted window on his driver's side door.
>
> Through the open passenger side door, Officer Rosinski asked [Appellant] whether the car was registered, and [Appellant] responded that it was not. Officer Rosinski told [Appellant] that the officers would have to tow the car, and [Appellant] yelled, "You ain't takin' shit." Moments later, [Appellant] again attempted to open the driver's side door and told Officer Stout to "get off the door," but Officer Stout pushed it back closed. [Appellant] then attempted to exit through the passenger side, but Officer Rosinski told [Appellant] to stay in the car. Appellant responded, "I will fuck you up." [Appellant] then tried to push the driver's side door open again as Officer Stout struggled to keep it closed. Appellant told Officer Stout, "Get the fuck off my door." [Appellant] then pushed the driver's side door open and exited from his vehicle.
>
> After exiting the car, [Appellant] slammed the door shut on Officer Stout's hand, which was on top of the door frame. [Appellant] then began fighting with Officer Stout, punching Officer Stout with a closed fist. Officer Stout responded by punching back at [Appellant.] Officer Rosinski then ran around the vehicle to aid Officer Stout, who also radioed for

- 2 -

> help from other officers as a crowd formed around them. After fighting with [Appellant] for several minutes, the officers eventually pinned him to the ground. During and after the fight, [Appellant] repeatedly cursed at the officers and continued to attempt to resist them until they were able to place him into the back of a police car.

(Trial Court Opinion, dated 3/4/25, at 2-3) (record citations omitted).[2]

Appellant was arrested and charged at docket No. 107-2021 with aggravated assault, simple assault, and terroristic threats concerning his conduct against Officer Rosinski, and at docket No. 108-2021 with terroristic threats concerning his conduct against Officer Stout. The cases were consolidated for trial and on May 16, 2024, the jury found Appellant guilty of terroristic threats in both cases, and not guilty of aggravated assault or simple assault. On August 26, 2024, the trial court sentenced Appellant to one to two years of incarceration plus one year of probation at each case, imposed consecutively. Appellant filed a timely post sentence motion, which the court denied on December 17, 2024. Appellant filed timely notices of appeal on December 23, 2024, at each underlying docket.[3] Pursuant to the court's order, Appellant filed his concise statement of errors complained of on appeal on February 6, 2025.

Appellant raises the following issue on appeal:

_____

[2] At trial, Officer Rosinski testified that Appellant told both officers he would "fuck them up." (N.T. Trial, 5/15/24, at 106).

[3] Following Appellant's application for consolidation, this Court consolidated the cases for appeal.

- 3 -

Was the evidence insufficient to sustain [Appellant's] convictions for terroristic threats as the Commonwealth failed to prove that [Appellant's] spur of the moment threats showed a settled intent to terrorize police?

(Appellant's Brief at 2).

Our standard of review of a challenge to the sufficiency of the evidence is well settled.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019)

(quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)). Importantly, "the jury, which passes upon the weight and credibility

of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* at 337 (quoting *Commonwealth v. Ramtahal*, 613 Pa. 316, 33 A.3d 602, 607 (2011)).

Appellant argues that the Commonwealth failed to establish that Appellant had the intent to terrorize. Appellant claims that his threat to "fuck up the officers" was no more than spontaneous outbursts made during a two-minute verbal exchange with police that quickly escalated. Appellant insists that there was no premeditation to his words, and his spur of the moment threats were not the type that the statute was intended to criminalize. Appellant analogizes the facts of his case to that of *Commonwealth v. Kidd*, 442 A.2d 826 (Pa.Super. 1982), where the defendant's threat was made during an unplanned and heated confrontation, constituting a spur of the moment statement during a period of transitory anger. (*See* Appellant's Brief at 10). Appellant concludes that the evidence was insufficient to establish his *mens rea* for terroristic threats, and this Court must grant relief. We disagree.

The Crimes Code states that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). This Court has explained:

> "To sustain a conviction for terroristic threats, the Commonwealth must prove that the defendant 1) made a threat to commit a crime of violence and 2) the threat was communicated with the intent to terrorize another." *Commonwealth v. Campbell*, 253 A.3d 346, 348 (Pa.Super. 2021). …[T]he legislature did not intend to

> "penalize mere spur-of-the-moment threats which result from anger." ***Id.*** However, "[w]hen determining whether a statement constitutes a terroristic threat, we must look at the statement in light of all the surrounding circumstances." ***Id.***; ***see also*** 18 Pa.C.S.[A.] § 2706 cmt.
>
> "The purpose of [the terroristic threats statute] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." ***Id.*** "[T]he real issue is whether the Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether the Appellant made the statements in the context of a heated discussion. Being angry does not render a person incapable of forming the intent to terrorize." ***Commonwealth v. Walls***, 144 A.3d 926, 936 (Pa.Super. 2016)[, *appeal denied*, 641 Pa. 244, 167 A.3d 698 (2017)] (citations, quotation marks, and brackets omitted). [Thus,] "[w]hen two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger." ***Id.*** at 937.

***Commonwealth v. Demulter***, 314 A.3d 934, 937-38 (Pa.Super. 2024), *appeal denied*, ___ Pa. ___, 325 A.3d 452 (2024). Notably, the statute does not require that the defendant intends to carry out the threat, nor does it require proof that the victim believes that the threat will be carried out. ***See id.***

Whether the elements of terroristic threats are satisfied depends on the totality of the circumstances present. For example, in ***Demulter, supra***, this Court held that the appellant's threat to kill her neighbor was not a spur of the moment threat resulting from anger since it was not precipitated by a heated exchange. This Court explained that even if the appellant's threat was made in anger, it was not the result of spur of the moment transitory anger

but came from the longstanding hostile relationship between the appellant and her neighbor. *Demulter, supra* at 938.

Similarly, in **Commonwealth v. Campbell**, 253 A.3d 346 (Pa.Super. 2021), this Court considered the totality of the circumstances, and explained that where the appellant's threat of physical violence was sandwiched between actual acts of physical violence, the circumstances provided a sufficient basis for the factfinder to infer that the appellant threatened the victim with the intent to terrorize him, rather than conclude that the threats were spur of the moment. *Id.* at 349.

On the other hand, in **Kidd, supra**, on which Appellant relies, this Court held that under the totality of the circumstances, the appellant's statements did not form the basis for terroristic threats. There, police officers arrested the appellant for public drunkenness. The appellant fell while in the street and was taken to the hospital for treatment. In the hospital, the appellant told the police he was going to kill them. This Court concluded that "[a]ppellant was obviously inebriated and in an agitated and angry state of mind. The record evinces that his conduct expressed transitory anger rather than a settled purpose to carry out the threat or to terrorize the other person." **Kidd, supra** at 827. As such, this Court vacated the appellant's conviction for terroristic threats.

Instantly, the trial court concluded that "similar to **Campbell,**[ *supra*, Appellant's] intent to terrorize was evidenced by [Appellant's] immediate

attempts to follow through on injuring the officers by forcing his way out of his car and physically attacking them." (Trial Court Opinion, 3/4/25, at 6). The trial court found that Appellant's threats were "not made merely in 'transitory anger,' given that he proceeded to initiate a fight with the officers." (*Id.*) As such, the court concluded that the Commonwealth presented sufficient evidence to prove the *mens rea* necessary to sustain Appellant's conviction.

We agree with the trial court's analysis. The evidence was sufficient to establish that Appellant threatened the officers with the intent to terrorize. *See* 18 Pa.C.S.A. § 2706(a)(1). Appellant threatened the officers during a routine traffic stop after police repeatedly advised him to remain in his vehicle. Contrary to the appellant in *Kidd, supra*, Appellant demonstrated the means and ability to carry out his violent threats as evidenced by his subsequent attack on the officers immediately after threatening to "fuck [them] up." Viewing the totality of the circumstances in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient for the jury to reasonably infer that Appellant intended to terrorize the officers. *See Demulter, supra*; *Campbell, supra*. Therefore, Appellant's challenge to the sufficiency of the evidence underlying his convictions is meritless. *See Sebolka, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/15/2025